LOUIS MAZZILLI, PLAINTIFF-APPELLANT, v. ADAM SEL-
GER AND FRANCES SELGER, DEFENDANTS-RESPOND-
ENTS.

Argued September 9, 1953—Decided September 28, 1953.

*Mr. Robert C. Gruhin* argued the cause for the appellant (*Mr. Morris Edelstein,* attorney).

*Mr. Elmer J. Bennett* argued the cause for the respondent Adam Selger (*Mr. James P. Beggans,* of counsel; *Mr. Milton A. Dauber,* on the brief; *Messrs. Carpenter, Gilmour & Dwyer,* attorneys).

*Mr. George J. Kaplan* argued the cause for the respondent Frances Selger.

The opinion of the court was delivered by

BURLING, J.   This appeal calls for review of civil actions wherein the gravamen of the complaints sounds in tort. Louis Mazzilli (hereinafter adverted to as the plaintiff) appealed to the Superior Court, Appellate Division, from judgments of dismissal entered against him in the Hudson County Court in favor of the defendants Adam Selger and Frances Selger.   The Appellate Division affirmed the judgments.   *Mazzilli v. Selger,* 23 *N. J. Super.* 496 (1952). Certification was allowed by this court on the plaintiff's petition therefor.   11 *N. J.* 593 (1953).

The plaintiff sustained severe injury to his face and other portions of his body on April 21, 1949 as a result of the discharge of a single-barreled shotgun in his direction by Kenneth Selger, then of the age of nine years and ten months, the minor son of Adam and Frances Selger.

In order to obtain recompense for the damages occasioned by his injuries, the plaintiff instituted two civil actions in the Law Division of the Hudson County Court. In one he proceeded against Adam Selger (also adverted to in the pleadings as Adam Sulga) and his son, Kenneth, and in the other action he named as defendant the mother, Frances Selger (sometimes referred to in the pleadings as Frances Sulga). These two actions were consolidated for trial. At the conclusion of the introduction of evidence on the ensuing trial, the Hudson County Court, Law Division, on motions of the defendants Adam and Frances Selger, entered judgments of dismissal against the plaintiff and in favor of those defendants. The jury rendered a verdict for compensatory and punitive damages in favor of the plaintiff against the infant, Kenneth Selger, upon which judgment was entered in the County Court. The plaintiff appealed to the Superior Court, Appellate Division, from the judgments of dismissal. Kenneth Selger appealed to the Appellate Division from the "denial of his motion to dismiss the Third Count of the complaint" addressed to him (the said third count was a claim for punitive damages), but did not otherwise appeal from the judgment of the trial court. The Superior Court, Appellate Division, ordered these appeals consolidated (on consent of counsel for all the parties thereto). After hearing on the consolidated appeals the Appellate Division affirmed the three judgments in all respects. *Mazzilli v. Selger, supra.* The plaintiff thereupon petitioned for and was allowed certification to review the judgments of the Appellate Division entered in favor of the defendants Adam Selger and Frances Selger. 11 *N. J.* 593 (1953). The son Kenneth Selger neither appealed nor petitioned this court for certification to review the judgment of the Appellate Division in his case. The present appeal involves only the judgments in favor of the defendants Adam Selger and Frances Selger.

Counsel have framed several questions for consideration by this court on the present appeal. Generally speaking, the legal questions involved are: (1) What are the applicable

principles of law as to the nature and extent of duty of these parents to protect third persons from injury by their offspring? (2) What effect, if any, upon the performance of such duty, has the fact that the parents are living in separate residences and the infant is living with and is in the custody of one parent? The remaining questions relate to the factual aspects of the controversy calling for determination whether the trial court erred in dismissing the complaints against Adam Selger and Frances Selger, or either thereof.

As this court recently stated in *Larocca v. American Chain and Cable Co.*, 13 *N. J.* 1, 5 (1953):

"The fundamental principles pertinent to this case are that negligence must be proved and will not be presumed; that while proof of certainty is not required, the evidence must be such as to justify an inference of probability as distinguished from the mere possibility of negligence on the part of the defendant; * * *."

And it is well settled that on a motion for judgment at the close of the reception of all the evidence the trial court cannot weigh the evidence but must accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor. See for example, *Wilson v. Savino*, 10 *N. J.* 11, 18 (1952); *Vadurro v. Yellow Cab Co. of .Camden*, 6 *N. J.* 102, 106 (1950).

Firearms have been a subject of legislative control, which indicates a recognition of damage which may ensue from the use of a dangerous instrument, especially in incompetent or unqualified hands. For example, see *N. J. S. Title 2A, Administration of Civil and Criminal Justice, Subtitle 10, Crimes, Chapter 151, Weapons and Explosives*, of which sections 10 and 11 (*N. J. S.* 2A:151–10, 11) are instances and provide as follows:

"2A:151–10.    Sale of weapons or loaded or blank cartridges to minors

"Any person who knowingly offers, sells, loans, leases or gives to any person under the age of 18 years, any of the .firearms or instruments enumerated in section 2A:151–2 of this title, or a toy pistol

from which a loaded or blank cartridge may be fired, or any loaded or blank cartridge therefor, is guilty of a misdemeanor.

"2A:151–11. Acquisition or use of firearms by minors; exceptions

"Any person under the age of 18 years who purchases, barters or exchanges any gun, pistol, toy pistol, or other firearm or any instrument or weapon from which any loaded or blank cartridges may be fired; or any person under the age of 16 years who carries, fires or uses any such instrument or weapon except in the presence of his father, guardian or some other responsible adult, or for the purpose of military drill under competent supervision, or for the purpose of competition or target practice in and upon a firing range approved by the governing body or the chief of police of the municipality in which such range is located, is guilty of a misdemeanor."

█ The present actions are not grounded upon a premise that the violation of a statute was the proximate cause of injury. The basic philosophy applicable to an action of this category is that to render a person liable on the theory of negligence there must be some breach of duty on his part to the individual complaining, the observance of which would have averted or avoided the injury. I *Shearman and Redfield on Negligence* (*Rev. ed.* 1941), *secs.* 4, 5, *pp.* 10–12; *Prosser on Torts* (1941), *sec.* 30, *p.* 177, and *sec.* 31, *pp.* 178 *et seq.; Harper on Torts* (1933), *sec.* 68, *pp.* 157–158.

█ The duty in the present case is to be found in the principle that one has a duty not to permit a third person to "use a thing or engage in an activity *which is under the control of the actor,* if the actor knows or should know that such person intends or is likely to use the thing or conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others" (emphasis supplied). *Restatement of the Law, Torts (Negligence)* (1934), *sec.* 308. This rule in substance was applied in *Wilson v. Brauer,* 97 *N. J. L.* 482, 484–485 (*E. & A.* 1922). *Cf. Pelry v. Hopping,* 97 *N. J. L.* 418, 421 (*Sup. Ct.* 1922); *Driesse v. Verblaauw,* 9 *N. J. Misc.* 173 (*Sup. Ct.* 1931). Such a duty has been held to exist in connection with the storage or possession of dynamite cartridges in the home of the parent of an infant. *Vallency v. Rigillo,* 91 *N. J. L.* 307, 308 (*E. & A.* 1917).

A corollary philosophy is expressed in the *Restatement* as follows:

"A parent is under a duty to exercise reasonable care so as to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

(a) knows or has reason to know that he has the ability to control his child, and

(b) knows or should know of the necessity and opportunity for exercising such control." *Restatement of the Law, Torts (Negligence)* (1934), *sec.* 316.

While no decision in this State seems to be a direct declaration of the philosophy thus expressed in the *Restatement,* it is inherent in *Wilson v. Brauer, supra,* and is apposite here.

Upon application of these principles we are of the opinion that the trial court erred in dismissing the plaintiff's claim against Frances Selger, but did not err in dismissing the claim against Adam Selger.

It is undisputed and is established without contradiction that at the time of the occurrence in question Adam and Frances Selger were living in a state of separation which had commenced in December 1945, occupying separate residences, and that proceedings were then pending in the Superior Court, Chancery Division, instituted (in the former Court of Chancery, in 1947) by Frances for separate maintenance for herself and Kenneth Selger, the infant son of the marriage, who was as a matter of fact in her custody, and a temporary decree or order of the former court of Chancery had been made therein on January 6, 1948, which contained provisions requiring Adam Selger to pay the rent for Frances' home, the cost of fuel for heating purposes, and $35 per week "for her support and that of the infant child of the marriage in her custody."

The plaintiff testified that the shotgun which caused his injury was pointed at him by Kenneth Selger out of a window in the house at 880 Cedar Avenue, Secaucus, N. J., in which

Kenneth lived with his mother Frances Selger. There was testimony by one of Kenneth's companions that immediately prior to the occurrence Kenneth and the plaintiff had had an altercation over a pocket knife the plaintiff had promised Kenneth and that at the end of the discussion Kenneth said he was going to get "the gun." This witness testified that he subsequently observed Kenneth pointing the gun at the plaintiff from a window in Frances' house. Kenneth testified that at the time of the occurrence he was resting it on the window-sill in his mother's bedroom. Kenneth testified that he got the gun he used when the plaintiff was shot from "on top of the closet" in his mother's home, in the bedroom he and his stepbrother, John Phillips (an 18-year-old son of Frances Selger by a previous marriage) occupied. He testified that there was no lock on the closet. As to the shell he used, Kenneth testified he obtained such shell from his brother's top bureau drawer where there were "a few shells" all loaded with buckshot. The drawer was not locked nor were there keys for the drawers. The events surrounding Kenneth's procurement of the weapon and shell, and the firing at the plaintiff, as testified to by Kenneth, were established as well by other witnesses. Kenneth also testified that his mother did all the cleaning around the house. Adam Selger, called as a witness for the plaintiff, testified that Kenneth did not live with Adam, but lived in the house his wife occupied. Frances Selger testified that she "could not exactly say" who owned the shotgun but it was in the house where she lived. She knew her son John Phillips had a hunting license and admitted that the shotgun in evidence as the weapon causing the plaintiff's injuries "could be the same gun" that was used for duck hunting by John, and that she had seen him clean it about two weeks before the occurrence in question. She put the gun on top of the closet.

On the day the plaintiff was shot, Kenneth "was playing around with a B-B gun" in the morning. The plaintiff testified that Kenneth was pointing it at him and two of his fellow workmen. He also testified that twice before, within

a week before the shooting, Kenneth had pointed a gun at him. He further testified "I seen the mother and I said to her the boy was fooling around with a gun," and she had said "Don't worry about it" or "Don't worry about the gun." Kenneth, called as a witness for the plaintiff, testified that he saw his stepbrother shooting a rifle and saw hunters pass the house, and from watching them he taught himself to shoot, but he never shot a gun before except a "B-B" gun. He admitted that he had been "shooting" the "B-B" gun, without ammunition, on the morning of the occurrence in question. An hour or so before the shooting Frances, who had been at home all morning performing her "regular housework routine," left the house. She told Kenneth his lunch was in the house and he was to go in and eat it when he was ready but he was not to take anyone else into the house.

▮ Under the evidence in this case, most of which was undisputed, if accepted as true, there was sufficient for the jury to say whether it was negligent for the defendant Frances Selger to permit loaded shotgun shells to be kept unguarded in her house and to permit the shotgun in which their use was intended to be kept in the location where it was found, and if so whether Kenneth's conduct was what a prudent person would reasonably expect that a child of his age might do as a result of such negligence.

In the disposition of these appeals in the Superior Court, Appellate Division, stress was laid upon the fact that the treatment by Frances Selger of the inert and unloaded gun raised no duty upon her as the mother of Kenneth unless coupled with knowledge of the availability of ammunition therefor. Knowing her son Kenneth's age of nine years and ten months and his propensity to be carefree in his use of the "B-B" gun, knowing also the existence of the shotgun and that it was left by her on top of a closet in the room Kenneth occupied under her own roof and custody, and knowing of the use of the shotgun for hunting purposes by her older son, John Phillips, and that the latter occupied the same room with Kenneth, the duty rested upon Frances

Selger to use reasonable care that such lethal weapon would not be discharged except under competent supervision or by competent and legally authorized persons.

The case against Adam Selger differs. Adam, called as a witness for the plaintiff, testified that he (Adam) was president of a corporation which owned the three-acre tract of land upon which both the house he resided in and the other house occupied by his wife were located, and that he paid the rent to the corporation for both houses; that he had ordered the plaintiff to work on the fence at his wife's residence and that Adam had charge of repairs there. The plaintiff testified that it was at the house occupied by Mrs. Selger where he was injured; he also testified he knew Adam lived in the other house. There was no dispute as to the fact that Kenneth lived with his mother Frances, and that his father, Adam, lived in the other house. Adam testified he owned no shotgun and there was testimony that the shotgun in question was owned by John Phillips, son of Frances Selger. The plaintiff at first testified that he had seen the shotgun in Adam's house, but subsequently on cross-examination changed his testimony and admitted that the weapon in evidence was the first single-barreled shotgun he had ever seen, that he never had handled shotguns and that he did not know from the appearance of the weapon which injured him whether it was a gun he had seen a week before in Adam's house.

There is nothing in the testimony from which a jury might infer that Adam had access to the interior of his wife's home, had possession of the weapon or the shells for use therein, or even that he had knowledge of the existence of the specific weapon or shells before the occurrence in question. There was introduced in evidence a letter from Adam's attorney to the plaintiff's attorney, erroneously stating that Adam owned the shotgun. However there was also introduced in evidence a subsequent letter correcting the attorney's mistake in the first letter and informing plaintiff's counsel that the owner of the shotgun was John Phillips. The first statement under the circumstances can-

not be construed as a declaration against interest. There remains therefore only the question whether a jury question was presented on the theory of Adam's (the father's) parental duty, assuming that negligence on that theory was averred in the pleadings and pretrial order.

■ The maintenance of separate domiciles is well established. in the evidence, and maintenance provisions were being made by the husband for his wife and child Kenneth under a court decree which recited that Kenneth was in her custody. As to matters of custody of Kenneth, the evidence is that Kenneth lived with his mother, that he usually got his allowance from her but had received some from his father. There is no evidence that Adam had custody of Kenneth, or control over his actions. There is no evidence from which a jury might reasonably infer that Adam was called upon to exercise control in connection with the incident in question.

For the reasons expressed in this opinion the judgment of the Superior Court, Appellate Division, in the matter of *Mazzilli v. Selger* is affirmed; the judgment of the Superior Court, Appellate Division, in the matter of *Mazzilli v. Selger*, is reversed, and that case will be remanded to the Hudson County Court for new trial.

*For affirmance in part and reversal in part*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT and BURLING—4.

*For reversal as to both respondents*—Justices JACOBS and BRENNAN—2.

*For affirmance as to both respondents*—Justice WACHENFELD—1.