Bill W. STANLEY, Patricia Stanley, Natural Parents and Next of Kin of Jason Wayne Stanley, Deceased, Plaintiffs–Appellants,

v.

Kenneth R. JOSLIN, Kenneth Forrest Joslin, and Ida Joslin, Defendants–Appellees,

and

Karl S. Joslin, a Minor, Joyce Joslin Redden, A.F. Joslin, and Grace Baptist Church Defendants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 30, 1987.

Application for Permission to Appeal Denied by Supreme Court Aug. 22, 1988.

John E. Rodgers, Sr., Butler, Lackey, Rodgers & Snedeker, Nashville, for plaintiffs-appellants.

Hugh C. Gracey, Jr., Alan M. Sowell, Gracey, Ruth, Howard, Tate & Sowell, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

Plaintiffs filed their complaint against seven defendants [1] and alleged that the defendants "each individually and collectively, negligently and wrongfully exercised their care, custody, control and responsibility over the premises, items, and those in their care and control therein in a negligent and wrongful manner knowingly, willfully and wantonly allowed to exist and caused conditions which directly and proximately caused the injury and death of Jason W. Stanley."

The trial court granted defendants', Kenneth R. Joslin, Kenneth Forrest Joslin, and Ida B. Joslin, motion for summary judgment after finding that plaintiffs failed to prove an essential element of the case, *i.e.*, that the defendants "had the care, custody, control and responsibility of and for the minor, Karl."

The pertinent facts are as follows:

Defendant, Ida Joslin, resides at 1500 Old Hickory Boulevard in Davidson County, Tennessee. Her foster son, defendant Kenneth Russell Joslin, and his son, defendant Kenneth Forrest Joslin, live with Ida Joslin.

Located on the lot at 1500 Old Hickory Boulevard is a house trailer in which Kenneth Russell Joslin's former wife, Joyce Joslin Redden, and their son, Karl Joslin, reside.

Karl Joslin, according to his grandmother, defendant Ida Joslin, "stayed up at my house a lot."

Plaintiffs' decedent, Jason Wayne Stanley, "was the only friend that Karl had and they were very, very close, just like brothers."

On January 29, 1985, Karl Joslin was fourteen years of age and Jason Wayne Stanley was thirteen years of age.

Both Karl and Jason had spent many nights together at Ida Joslin's home. On January 29, 1985, Karl and Jason were spending the night at Ida Joslin's home. They had spent the night of January 28th and had been at Mrs. Joslin's all day on the 29th.

Following supper, Jason had gone to the kitchen and asked Mrs. Joslin if he could have another sandwich. She gave him a sandwich and Jason returned to the den where he had left Karl.

When Jason returned to the den, Karl "showed Jason a gun" which Karl had taken from a gun rack in the den. Karl "put two empty and a live shell in the rifle." He had taken both the empty shells and the live shell from "a little box that was located on the gun rack."

According to Karl, he "barely picked up the rifle. I had my hand on the lever, the hammer was cocked. As I picked up the gun, it went off." Jason was sitting on the floor approximately eight to ten feet from Karl, leaning against a foot stool. Jason was struck by the live round in the left shoulder with the round passing through

---

1. The complaint as to A.F. Joslin and Grace Baptist Church was non-suited. The complaint was dismissed as to Karl S. Joslin and his mother Joyce Joslin Redden following a settlement of plaintiffs' claim against them.

his chest and exiting through his right shoulder. He was pronounced dead upon arrival at the hospital.

The gun rack contained four rifles. One 30–30 rifle and two 22–caliber rifles belonged to defendant Kenneth Forrest Joslin and a 22–caliber rifle belonged to his father, Kenneth Russell Joslin.

The record shows there was ammunition located in the gun rack for the 30–30 rifle. The record is not clear whether there was any 22–caliber ammunition in the gun rack.

At the time this unfortunate incident occurred, Kenneth Russell Joslin was at work at Tenneco Oil Company. Kenneth Forrest Joslin had returned home from work at about 6:00 p.m. and was there when the rifle was discharged.

Karl Joslin had been forbidden by his grandmother, the defendant Ida Joslin, to ever touch the rifles and, so far as the record shows, this was the first and only time he had removed a rifle from the gun rack.

The trial judge, in granting the motion for summary judgment, relied on *Moman v. Walden,* 719 S.W.2d 531, 533 (Tenn.App. 1986), in which this Court adopted the language of *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), as follows:

"[S]ummary judgment shall be entered against a party who failed to make a showing sufficient to establish the existence of an essential element to that party's case and on which the party will bear the burden of proof at trial. If the non-moving party fails to establish the existence of an essential element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."

The trial court then stated: "Plaintiffs alleged but have no proof that these moving defendants had the care, custody, control and responsibility of and for the minor,

Karl. They therefore failed to prove an essential element of their case."

The trial court correctly stated the rule. However, it incorrectly applied the rule. Whether defendants had the "care, custody, control and responsibility of and for the minor, Karl" is not an essential element of their case.

■ Whether the defendants are liable to the plaintiffs or not is not predicated upon whether they had "care, custody, control and responsibility" for Karl. "[I]n the absence of a statute, the law is well settled that a parent is not liable for the torts of his minor child as a general rule." *Highsaw v. Creech,* 17 Tenn.App. 573, 581, 69 S.W.2d 249, 254 (1933). This rule would also apply to a grandparent or to a sibling.

Therefore, we are not confronted with whether the half-brother, father, or grandmother is liable based upon their relationship with Karl but with whether the defendants or either of them by their conduct was guilty of negligence and, if so, was their negligence the proximate cause of the death of Jason Wayne Stanley.

We have been cited to no Tennessee case, nor has our research revealed one that has directly faced the situation we have here, *i.e.,* the duty of care of one who owns or possesses a dangerous instrumentality and leaves it where minors may have access to that dangerous instrumentality or the duty of care of one who has control of the premises where a dangerous instrumentality is left where minors may frequent the premises and have access to the dangerous instrumentality.

Many jurisdictions have considered this question,[2] and are divided. Some have held that no liability arises from the fact that a dangerous instrumentality is left where a minor may have access to it.

In *Lacker v. Ewald,* 8 Ohio N.P. 204, 11 Ohio Dec. 337 (1901), the court held that the mere fact that a father carelessly and negligently left his gun exposed did not

---

**2.** For other jurisdictions which have considered this question, see Annotation, *Liability of Person Permitting Child to Have Gun, or Leaving Gun* *Accessible to Child, For Injury Inflicted by the Latter,* 68 A.L.R.2d 782 (1959).

render the father liable for the killing of a dog by his infant son.

Defendants were held not to be liable in *Lopez v. Chewiwie*, 51 N.M. 421, 186 P.2d 512 (1947), merely by reason of leaving a loaded firearm in their home with their thirteen-year-old son. The son had taken the rifle and shot and killed plaintiffs' intestate. The court reasoned that loaded firearms were kept in a great many homes in the state and that the general policy of the state relative to firearms was found in the constitutional provision that the people have the right to bear arms for their security and defense. The court further reasoned that absent knowledge on the part of the parents that their child of thirteen was indiscreet or reckless in handling firearms, the mere keeping of a loaded gun on the premises and leaving the boy there alone did not render the parents liable for torts committed by the child.

Other jurisdictions have held that where a person leaves a dangerous instrumentality where it is accessible to children, that person may be guilty of negligence and liable for injuries caused by the dangerous instrumentality if their negligence is the proximate cause of the injury.

The court in *Mazzilli v. Selger*, 23 N.J. Super. 496, 93 A.2d 216 (1952), *aff'd* 13 N.J. 296, 99 A.2d 417 (1953), held that the mother's negligence was a jury question where her nine-year-old child obtained a shot gun belonging to his step-brother from the top of a closet where it had been placed by the mother and the room was shared by the nine-year-old and the step-brother and the nine-year-old obtained shells for the shot gun from the step-brother's dresser drawer in the same room. The father was held not to be liable where it was shown that the mother and father were separated at the time of the incident and the father had no control of the premises.

In *Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957), a twelve-year-old plaintiff sought damages for personal injuries sustained when he was shot with a 22-caliber pistol that his twelve-year-old cousin had taken from an unlocked dresser drawer in the bedroom of their grandfather's summer cottage where they were both visiting. The court stated:

> The possession of this loaded Colt pistol did not constitute Bach an insurer against liability for injuries arising from its use nor render him liable without fault; it did, however, impose upon him a very serious and grave responsibility. Its possession placed upon him the duty of exercising not simply ordinary, but extraordinary care so that no harm might be visited upon others. We are not called upon to determine whether the possession of other instrumentalities or objects, such as knives, medicines, poisonous substances, etc., would impose the same degree of care under similar circumstances; we are simply to determine the degree of care imposed upon the possessor of a loaded pistol, a weapon possessing lethal qualities, under the circumstances. In this connection the language of Mr. Justice Gibson in Sullivan v. Creed, 2 (Ir.) K.B.D. 317, 2 BRC 139, is appropriate: "A hatchet, a bottle of poison labeled 'poison', the same bottle unlabeled, a loaded gun, gunpowder, or dynamite, all represent articles of varying degree of danger, and the greater the danger the higher is the standard of the diligence which the law exacts."

> The duty imposed upon Bach encompassed all those persons who might suffer harm or injury from the pistol's discharge and included the pistol's use not only by Bach but its use by a third person if Bach knew or had reason to know that such person was likely to use the pistol in such a manner as to create "an unreasonable risk of harm to others."

> . . . .

> We are not confronted with the question of a grandparent's liability for the tortious conduct of a minor grandchild; on the contrary, we are determining whether the grandparent by his own conduct was guilty of negligence, and whether, if negligent, his negligence was the proximate cause of Kuhn's injury. Bach's liability depends on the nature of the instrumentality involved, the place,

the time and the persons likely to be brought in contact with the instrumentality. The gist of the liability sought to be imposed is that Bach was negligent in permitting a highly dangerous instrumentality to be in a place where the incautious hands of a child might come in contact with it and the handling and discharge of this instrumentality by the child was the natural and probable consequence of Bach's negligence and such a consequence as might and ought to have been foreseen by Bach as likely to flow from his act. Bach's act in permitting this weapon, with its deadly potentialities, to remain in a place frequented by young children constituted negligence on his part; the intervention of his young grandchild did not break the chain of causation between his negligence and the injury which occurred and was a natural and probable result to be anticipated from the original negligence.

The Restatement of the Law of Torts ... § 308 declares: "It is negligent to permit a third person to use a thing or to engage in an activity which is under the control of the actor if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." Particularly significant is Comment (b) thereunder: "The rule stated in this Section has its most frequent application where the third person is a member of a class which is notoriously likely to misuse the thing which the actor permits him to use. *Thus, it is negligent to place loaded firearms or poisons within reach of young children or feeble-minded adults.*" (Emphasis supplied.) Appellant (Bach Estate) seeks to distinguish the Restatement rule on the ground that Bach did not "permit" the boy Brugger to use the pistol in that he did not expressly allow him to do so; such a distinction is unrealistic and would render meaningless Comment (b). The further argument that, because of the juxtaposition of the words "young children" and "feeble-minded adults", Comment (b) is restricted to young children legally incapable of negligence does violence to the language of the Comment. Both the Restatement rule and the Comment are apposite to the present situation.

The affixation of liability under circumstances similar to the instant situation is neither novel nor without precedent in other jurisdictions. *Id.* at 348, 135 A.2d at 403–05.

In *Glean v. Smith*, 116 Ga.App. 111, 156 S.E.2d 507 (1967), a case where a six-year-old was shot by the defendant's three-year-old son when the son opened a drawer, removed a loaded pistol, and discharged it at the plaintiff, the court held that "[t]he duty of the owner of land is to exercise ordinary care in keeping the premises safe. 'As to an infant * * * the owner of premises on which a dangerous thing exists may in legal duty be bound to use a greater quantum or precaution in behalf of such infant licensee than he would in behalf of an adult invited guest.'" (citations omitted). *Id.* at 113, 156 S.E.2d at 508. The court went on to state that under the facts pleaded "[i]t is for the jury and not the court to determine whether these facts, if proved as alleged, amount to negligence under all the circumstances of the case." *Id.* at 114, 156 S.E.2d at 509.

In *Hart v. Lewis*, 187 Okla. 394, 103 P.2d 65 (1940), the manager of a cotton gin was cleaning a pistol and laid it upon the counter. Two minors came into the office and one of the minors picked it up and it discharged, killing plaintiff's decedent. The court held that the issue of whether the defendant was negligent in placing a loaded pistol within reach of an eleven-year-old boy and if so, whether his negligence was the proximate cause of the injury was for the jury. In making this determination the court stated that one in possession or control of a dangerous instrumentality such as a loaded pistol was required by law to exercise the highest degree of care to prevent children of tender age from acquiring possession of the dangerous instrumentality.

A nine-year-old shot the plaintiff with a rifle purchased for defendant father's per-

sonal use in hunting squirrels. The father had displayed the gun to his infant children, but did not caution them against its use. He left the gun in the pantry of his home and the shells for the gun in the pocket of a sweater which hung in his living room. The court held that whether the defendant was negligent and, if so, if his negligence was the proximate cause of the injury was for the jury. *Sojka v. Dlugosz*, 293 Mass. 419, 200 N.E. 554 (1936).

We are of the opinion that the better rule is that, taking all the facts and circumstances into consideration, when a person leaves a dangerous instrumentality where it is accessible to children, that person may be guilty of negligence and liable for injuries caused by the dangerous instrumentality if the negligence is the proximate cause of the injury.

Here, Ida Joslin, who was in control of the premises, recognized the danger in having the rifles and ammunition in the unlocked gun rack. She had gone so far as to forbid Karl to ever touch the rifles. Yet, so far as the record shows she did nothing to see that the rifles were rendered harmless. She took no steps to have the rifles locked in the gun rack or to have the ammunition stored separately from the rifles. The only step she took was to simply admonish Karl not to touch the rifles. Whether her conduct under the facts and circumstances was negligence and, if so, whether the negligence was the proximate cause of Jason Wayne Stanley's death is, under the circumstances here, a question for the jury.

Kenneth Forrest Joslin stored both the 30–30 rifle and the 30–30 rounds in an unlocked gun rack. He knew that his fourteen-year-old half-brother stayed at the house "a lot." He knew that the 30–30 rifle and the ammunition for that rifle were accessible to his half-brother. Whether Kenneth Forrest Joslin's conduct under all the circumstances amounted to negligence and, if so, whether that negligence was the proximate cause of Jason Wayne Stanley's death is a question for the jury.

In determining whether or not a genuine issue of fact exists in a summary judgment case, we must look at all the evidence, take the strongest legitimate view of it in favor of the opponent of the motion and allow all reasonable inferences from it in his favor, discard all countervailing evidence and if then there is any dispute as to any material determinative evidence or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. *Dickerson v. Sanders Manufacturing Co.*, 658 S.W.2d 535 (Tenn.App.1983); *Berry v. Whitworth*, 576 S.W.2d 351 (Tenn.App.1978); Tenn.R. Civ.P. 56.03. Applying this rule to the facts here, we hold that there is a dispute as to material determinative evidence as to the negligence of defendant Ida Joslin and defendant Kenneth Forrest Joslin.

Applying the same rule to the defendant Kenneth Russell Joslin, we hold that there is no genuine issue of material fact regarding his liability. While it may or may not have been negligence for Kenneth Russell Joslin to store his 22–caliber rifle in an unlocked gun rack, his negligence, if any in doing so, was not the proximate cause of the death of Jason Wayne Stanley. Further, there has been no showing that Kenneth Russell Joslin exercised any control over the premises at 1500 Old Hickory Boulevard. So far as the record shows he simply lived there at the sufferance of his mother, Ida Joslin.

It therefore results that the judgment of the trial court in granting the motion for summary judgment as to defendants Ida Joslin and Kenneth Forrest Joslin is reversed. The judgment granting the motion for summary judgment as to defendant Kenneth Russell Joslin is affirmed. The costs of this appeal are assessed to the defendants, Ida Joslin and Kenneth Forrest Joslin, and the cause remanded to the Circuit Court for the collection of costs, for a trial on the merits, and for any further necessary proceedings.

CANTRELL and KOCH, JJ., concur.