IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

# DOROTHY J. JOHNSTON v. FRED E. COWDEN, JR.

**Direct Appeal from the Circuit Court for Davidson County
No. 97C-365 Thomas Brothers, Judge**

————————————

**No. M1999-00962-COA-R3-CV - Decided May 25, 2000**

————————————

This legal malpractice action was filed against the estate of a deceased attorney who allegedly failed to file a civil action and a claim for compensation under the Criminal Injuries Compensation Act on the plaintiff's behalf. Implicitly applying the Dead Person's Statute, Tenn. Code Ann. § 24-1-203, the trial court granted the estate's motion for summary judgment on a finding that the deceased attorney was never retained. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

COTTRELL, J., delivered the opinion of the court, in which CANTRELL, P.J., M.S. and CAIN, J. joined.

Lionel R. Barrett, Jr., Nashville, Tennessee, for the appellant, Dorothy J. Johnston.

John P. Branham & Kathryn E. Barnett, Nashville, Tennessee, for Fred E. Cowden, Jr. Deceased, by Fred E. Cowden, Sr., as Executor of the Estate of Fred E. Cowden, Jr.

**OPINION**

————————————

Dorothy ("Dodi") J. Johnston filed this legal malpractice case against the estate of Fred E. Cowden, Jr., a deceased attorney who allegedly failed to file a civil action and a claim for compensation under the Criminal Injuries Compensation Act on her behalf. The trial court granted the estate's motion for summary judgment on a finding that Ms. Johnston never retained Mr. Cowden.

On February 3, 1995, Ms. Johnston was injured by an individual who was subsequently arrested and convicted of aggravated assault. It is undisputed that sometime prior to January 8, 1996, Ms. Johnston consulted with Mr. Cowden about suing the man who assaulted her and filing a claim under the criminal injuries compensation statutes. The outcome of this appeal

hinges on whether there is sufficient evidence in the record to support a finding that Ms. Johnston's contact with Mr. Cowden gave rise to an attorney/client relationship and/or that Ms. Johnston suffered any damage from the failure to file a victim compensation claim.

The complaint alleges that Ms. Johnston hired Mr. Cowden at an unspecified time to file the actions arising from the assault. However, the record shows that on January 8, 1996, Mr. Cowden sent Ms. Johnston the following letter:

> You had indicated that you wanted me to prepare your claim for compensation under the Criminal Injury Compensation Program. You sent me the forms, however, I need certain information from you in order to complete the forms. In addition, you had discussed the possibility of filing a civil suit against the individual convicted of the assault, and we need to discuss that if you decide to pursue the matter. I would appreciate hearing from you at your earliest convenience.

The record contains no evidence that Ms. Johnston complied with this request.

The complaint alleges that when Ms. Johnston contacted Mr. Cowden on February 5, 1996, she was shocked to learn that he had never pursued her claims and the statute of limitations had passed.

In November of 1996, Mr. Cowden was fatally injured. Ms. Johnston commenced the underlying action against his estate in February of 1997, seeking $250,000 in damages.

In October 1997, Mr. Cowden's estate moved for summary judgment on two bases: (1) that there was no competent evidence that Mr. Cowden had agreed to represent Ms. Johnston in the civil action, and (2) Ms. Johnston had suffered no harm due to Mr. Cowden's failure to file the claim for victim's compensation because the opportunity to file the claim still existed. Thus, the motion alleged separate reasons for dismissal of each of the two claims of malpractice brought by Ms. Johnston. In support of the motion the estate filed the above quoted letter and a second letter addressed to Ms. Johnston's present counsel from Christine Carlton, another attorney who had previously represented Ms. Johnston in some matters. This letter stated in pertinent part that Ms. Carlton recalled speaking to Mr. Cowden in March 1996 about Ms. Johnston's assertion that he was to file the claims at issue for her. She recalled:

> He confirmed that he had not deemed her civil action worthwhile and told me he had not felt obligated to advise her of his decision not to file suit as he believed he was only officially retained regarding the other matters he was handling for her.[1] He was unaware that the statute had also run on the criminal injuries

---

[1] Both parties agree Mr. Cowden was providing representation to Ms. Johnston on matters unrelated to the assault and the two potential remedies growing out of that assault.

compensation claim and said he would call me back after he looked into the matter. He subsequently phoned and directed my attention to a saving clause in T.C.A. § 29-13-108(a) which provides that "upon good cause shown, the time period for filing such claim may be extended either before or after the expiration of the filing period." He suggested that Dodie try filing a late claim and offered to provide me with a sworn affidavit admitting his liability if it became necessary. He was hopeful that she would be appeased if her claim was approved, but stated that he would "call his carrier" if all else failed, or words to that effect. He then had her file delivered to me . . . I subsequently lost touch with Dodie and never followed through with filing the late criminal injuries compensation claim, primarily because she never paid me for the first work I did for her. (In fact, I'm still out $33 in out-of-pocket expenses.) . . .

The third exhibit attached to the estate's motion for summary judgment was an excerpt from Ms. Johnston's deposition, her response to a question seeking the reason why she never filed a late claim for compensation as a victim. She testified:

I don't know how to do that. That's not my job. I tried to get Lionel [her present attorney in this action] to do it. I don't know how to do it. I'm the victim; I'm not the attorney.

The sole evidentiary support for Ms. Johnston's response to the motion for summary judgment was her affidavit which stated in pertinent part:

I specifically remember Mr. Cowden talking in terms of the personal injury case in which he said that we would get more judgment from the defendant that would be more than he would ever be able to pay. Those were Mr. Cowden's specific words, or close thereto. I recall specifically that he said that we should probably get $250,000 in compensatory damages and $250,000 in punitive damages, for a total of $500,000. During the period of time that Mr. Cowden was representing me on the other matters, whenever I would make any inquiry as to the personal injury case he was representing me on, he would always tell me not to worry about it.

Mr. Cowden's estate responded that this evidence was barred by the Dead Person's Statute, Tenn. Code Ann. § 24-1-203, which prohibits persons who sue the estate of a deceased person from testifying about statements made by the decedent. The estate argued that Ms. Johnston had presented no admissible evidence to oppose the motion for summary judgment.

The trial court agreed, finding that the absence of evidence showing that Ms. Johnston had retained Mr. Cowden mandated summary judgment. It stated that the mere fact that there had been an apparent discussion concerning the possibility of a lawsuit was insufficient to

establish an attorney/client relationship.[2]   Ms. Johnston appealed this ruling.

On appeal, Ms. Johnston challenges the trial court's finding that the evidence of her attorney/client relationship with Mr. Cowden was insufficient.  She maintains the existence of that relationship presents a disputed issue of fact precluding summary judgment.

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Summary judgment is appropriate only where the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993); Tenn. R. Civ. P. 56.03. We review the summary judgment motion as a question of law in which our inquiry is de novo without a presumption of correctness. *Finister v. Humboldt Gen. Hosp., Inc*., 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn.1997). We must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Byrd,* 847 S.W.2d at 210-11. If both the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, then summary judgment is appropriate. *Robinson,* 952 S.W.2d at 426; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997).

*Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 94 (Tenn.1999).

Summary judgment is inappropriate if a "genuine issue as to any material fact" exists. *See* Tenn. R. Civ. P. 56.03.  However, there can be no genuine issue for trial unless there is sufficient evidence upon which a jury can return a verdict.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986).  Thus, complaints can be dismissed on summary judgment if plaintiffs, after being given a reasonable opportunity, are unable to establish an essential element of their case on which they will have the burden of proof at trial.  *See Stanley v. Joslin*, 757 S.W.2d 328, 330 (Tenn. Ct. App. 1987); *see Moman v. Walden,* 719 S.W.2d 531, 533 (Tenn. Ct. App. 1986).

---

[2]In its order granting summary judgment, the trial court did not mention the Dead Person's Statute. The trial court dismissed both claims, stating:

> The Court specifically finds that there is no genuine issue of fact concerning whether Plaintiff actually retained the services of Defendant for purposes of filing a claim for compensation under the Criminal Injury Compensation Program. The mere fact that there was apparently discussion concerning the possibility of such representation is not enough to establish the required attorney client relationship.

Thus, while the court granted summary judgment to the defendant on the entire complaint, the findings relate to only one claim.

Ms. Johnston bore the burden of proving all the essential elements of legal malpractice. *See Horton v. Hughes,* 971 S.W.2d 957, 959 (Tenn. Ct. App. 1998).

> In a suit against an attorney for professional negligence, the plaintiff must prove three things in order to recover:  (1) the employment of the attorney;  (2) neglect by the attorney of a reasonable duty;  (3) damages resulting from such neglect.

*Sammons v. Rotroff,* 653 S.W.2d 740, 745 (Tenn. Ct. App. 1983), *cert. denied*, 464 U.S. 860, 104 S.Ct. 186, 78 L.Ed.2d 165 (1983); *see  Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.*, 813 S.W.2d 400, 403 (Tenn. 1991); *Blocker v. Dearborn & Ewing,* 851 S.W.2d 825, 827 (Tenn. Ct. App. 1992).

Here, the only evidence Ms. Johnston produced in opposition to the estate's motion for summary judgment was her affidavit.  As the trial court implicitly determined, the admission of Ms. Johnston's affidavit is governed by Tennessee's Dead Person's Statute, Tenn. Code Ann. § 24-1-203 (1980).  That statute states:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors.

The purpose of this statute is to prevent  testimony of the living against the dead.  It precludes

> the surviving party from having the benefit of his own testimony, when, by the death of his adversary, his representative was deprived of the decedent's version of the transaction or the statement.  *McDonald v. Allen*, 8 Baxt. 446; *Bingham v. Lavender*, 2 Lea 48, 70 Tenn. 48.

*Baker v. Baker*, 24 Tenn. App. 220, 230,142 S.W.2d 737, 744 (1940).

Several factors bring a case within the purview of this statute, thereby authorizing the exclusion of the evidence: (1) the proposed witnesses must be parties to the suit such that judgment may be rendered for or against them and (2) the subject matter of their testimony must concern some "transaction with or statement by the testator." *Leffew v. Mayes*, 685 S.W.2d 288, 293 (Tenn. Ct. App. 1984); *see Montague v. Thomason,* 91 Tenn. 168, 171-72, 18 S.W. 264, 265 (1892).  Testimony regarding a transaction with a decedent is rendered incompetent under the statute when the decedent's estate or administration is a party to the lawsuit.  *See Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 230 (Tenn. Ct. App. 1976).

Each of these factors is present in the case before us.  First, Ms. Johnston is a party to this action such that judgment could be rendered for or against her.  In fact, she is challenging a

5

judgment against her in this appeal. Second, the subject matter of her affidavit concerns a transaction she purportedly had with Mr. Cowden, the decedent: it involves a statement she claims Mr. Cowden made relating to the viability of the causes of action arising from the assault against Ms. Johnston and relates to the existence of an employment arrangement between them. Third, Mr. Cowden's estate is a party to this action. Clearly, the Dead Person's Statute excludes Ms. Johnston's affidavit. In the absence of her affidavit, the record contains no evidence that Mr. Cowden owed a duty to Ms. Johnston relating to the causes of action arising from the assault, an essential element of her legal malpractice claim. *See Byrd v. Hall*, 847 S .W.2d 208, 215 (Tenn.1993) (the facts upon which the nonmovant relies must be admissible at trial); *Horton*, 971 S.W.2d at 959. Because the Dead Person's Statute precluded the admission of Ms. Johnston's affidavit, no evidence was presented in opposition to the estate's motion for summary judgment. Absent some proof giving rise to a disputed fact about whether Ms. Johnston retained Mr. Cowden to file a civil lawsuit for damages, summary judgment was appropriate as to that claim.

Ms. Johnston argues that the estate waived the statute's application by presenting as an exhibit the January 8, 1996 letter Mr. Cowden sent to her asking for additional information before he commenced action on her behalf. She presents no authority in support of this proposition.

While the Dead Person's Statute is waivable, such waiver does not occur when a document written by the decedent is admitted into evidence. The Statute may be waived when a party seeks to admit favorable portions of the decedent's discovery deposition but exclude unfavorable portions. *See Sherrod v. Mooneyham*, No. 03A01-9810-CV-00351, 1999 WL 538214 at *6 (Tenn. Ct. App. July 14, 1999) (Tenn. R. App. P. 11 application denied Jan. 3, 2000); *cf. Ingram v. Phillips*, 684 S.W.2d 954, 958-59 (Tenn. Ct. App. 1984) (holding that merely taking a discovery deposition that elicited evidence excludable under the Dead Person's Statute does not constitute a waiver). The restrictions of the Dead Person's Statute may also be waived when one opposing party calls the other as a witness to testify as to excludable evidence or a party testifies to excludable facts without objection. *See Burchett v. Stephens*, 794 S.W.2d 745, 748 (Tenn. Ct. App. 1990); *Smith v. Bacon*, No. 03A01-9409-CH-0331, 1995 WL 322155 at *3 (Tenn. Ct. App. June 1, 1995) (no Tenn. R. App. P. 11 application filed); *Rose v. Stalcup*, 731 S.W.2d 541, 542 (Tenn. Ct. App. 1987). But we have found no law which supports Ms. Johnston's contention that admission of a letter written by the decedent waives the Dead Person's Statute. The Dead Person's Statute, by its terms, prohibits the admission of testimony by parties as to transactions with or statements by the decedent. Mr. Cowden's letter is not testimony, and the record before us contains no testimony regarding this letter.

In the absence of an employment contract, Mr. Cowden was under no obligation to initiate any legal action on Ms. Johnston's behalf. The record supports the trial court's conclusion that no contractual agreement relating to the civil action existed. The letter Mr. Cowden wrote to Ms. Johnston reflects the uncertain nature of their relationship. In the letter, Mr. Cowden informed Ms. Johnston that he would take no action until Ms. Johnston provided him with additional information and they discussed the matter. Because Ms. Johnston provided

6

no admissible evidence to dispute this proof that their relationship had not ripened into an agreement that Mr. Cowden represent her in the civil lawsuit for damages against her attacker, the trial court properly granted summary judgment to the estate on this claim.

Whether Mr. Cowden was retained to represent Ms. Johnston on the victim compensation claim presents a more problematic question regarding the propriety of summary judgment on the basis of lack of an employment relationship. Mr. Cowden's letter indicates that Ms. Johnston was to provide him with further information, and nothing in her response to the motion demonstrates that she provided such information. However, the letter from Christine Carlton to Ms. Johnston's present lawyer, while clearly supporting a finding that no employment relationship was created regarding the civil action, raises the issue of whether Mr. Cowden felt he had been retained to file the victim compensation claim. Because the estate offered this letter in support of its motion for summary judgment, we believe it is estopped from arguing that the letter is not evidence which can be relied upon in deciding the motion. Viewing that letter and reasonable inferences therefrom in the light most favorable to Ms. Johnston, we are not convinced that a reasonable person could only conclude that no employment relationship existed regarding the victim compensation claim.

However, even if the trial court's conclusion that Ms. Johnston never retained Mr. Cowden does not apply equally to both claims she intended to pursue involving the assault, summary judgment on the victim compensation claim was nevertheless appropriate. As stated previously, one of the elements of legal malpractice is damages resulting from the attorney's neglect. *See Sammons*, 653 S.W.2d at 744. Ms. Johnston bore the burden of presenting sufficient evidence to raise an issue of disputed fact on that element. *See Stanley*, 757 S.W.2d at 330. This she failed to do. As the estate's motion specifically stated, "[T]he plaintiff's opportunity to file a petition under the Victim's Compensation Act still exists and therefore, the alleged inaction of Mr. Cowden did not harm the plaintiff."

The estate's position is based upon language of the statute. Although the Criminal Injuries Compensation Act includes a one year statute of limitation for filing claims thereunder, it also contains the following language: "upon good cause shown, the time period for filing such claim may be extended either before or after the expiration of the filing period." Tenn. Code Ann. § 29-13-108(a). There is no indication in the record that Ms. Johnston attempted to utilize this provision and file a late claim. She has not shown that her claim was or would have been rejected as untimely. According to Ms. Carlton, Mr. Cowden pointed out the "for good cause" language in the statute, offered to provide an affidavit to establish the "good cause," and sent Ms. Johnston's file on these matters to Ms. Carlton. Apparently, neither Ms. Carlton nor any other attorney attempted to file such a claim. In the absence of a showing that she lost her right to file a claim because of Mr. Cowden's failure to file a claim within one year, Ms. Johnston cannot show the essential element of damage.

Ms. Johnston's affidavit in response to the motion for summary judgment addresses primarily the civil lawsuit against her attacker and only mentions in passing a potential judgment

from the State of Tennessee. The affidavit nowhere responds to the allegation that she could show no harm regarding any failure on the part of Mr. Cowden to file a claim with the criminal injuries compensation fund.[3]

Accordingly, the judgment of the trial court is affirmed. This case is remanded for any further proceedings which may be necessary. Costs of this appeal are taxed to Ms. Johnston, for which execution may issue if necessary.

---

[3]In her written response to the estate's motion for summary judgment, Ms. Johnston stated:

It should also be pointed out that there is clearly no guarantee that a late-filed claim would have been honored by the Victim's Compensation authorities. It is clear, however, from a reading of the entire record that the very minor statutory amount that might have been paid by a Victim's Compensation claim was only secondary to the personal injury lawsuit that is at the heart of this litigation. The Court can take judicial knowledge that the Victim's Compensation statute is not an exclusive remedy, and provides only very nominal recovery under some circumstances.

This statement, of course, is merely argument and not evidence, but indicates the lack of importance Ms. Johnston placed on the claim under the Criminal Injuries Compensation Act. As the statement indicates, however, the Criminal Injuries Compensation Act contains various conditions, exceptions, and limitations regarding eligibility for payment. *See* Tenn. Code Ann. Ann. § 29-13-106. We also note that to succeed in showing damage, Ms. Johnston would have to demonstrate that she was entitled to payment under the Act.