Larry WOOLEY, Plaintiff-Appellant,

v.

GOULD, INC. and CNA Insurance Company, Defendants-Appellees.

Supreme Court of Tennessee.

July 5, 1983.

T. Robert Hill, Jackson, for plaintiff-appellant.

Carthel L. Smith, Jr., Lexington, for defendants-appellees.

## OPINION

HARBISON, Justice.

In this case appellant filed a petition or motion pursuant to Rule 60.02, T.R.C.P., to set aside and reopen a judgment of the Chancery Court of Madison County approving a lump-sum workers' compensation settlement. The settlement had been approved by the Chancellor on August 29, 1979. The motion for relief from the judgment was filed exactly one year later, on August 29, 1980. The Chancellor denied the motion on the ground that it was not timely, that there had been no tender or offer to return the benefits received and that appellant had filed a tort action in the circuit court seeking damages predicated upon the same allegations as those made in this case.

We do not deem that the last of these reasons is pertinent to the issues presented, but because we believe that the first two reasons given by the Chancellor were correct, his judgment is affirmed.

█ A motion seeking relief under Rule 60.02, T.R.C.P., must be filed within a reasonable time and if based upon claims of mistake, inadvertance, surprise, excusable neglect, fraud, misrepresentation, or other misconduct of an adverse party it must be filed not more than one year after the judgment was entered.

The reasons alleged for relief in this case are all based upon one or more of these grounds. The motion was filed on the anniversary date of the order sought to be set aside, and, therefore, was filed within the very maximum time limit permitted. This, however, does not make it timely if the trial court finds, as a matter of fact, that the movant has not acted reasonably and that he could have fairly and reasonably been expected to file the motion much more promptly.

Appellant asks this Court to prescribe procedures for the hearing of motions such as this. This is unnecessary, since Rule 43.05, T.R.C.P., expressly provides for the disposition of motions. That rule states:

> "When a motion is based on facts not appearing of record, the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."

In the present case the matter was heard upon affidavits and upon detailed discovery depositions filed with the Chancellor on the date of the hearing, May 14, 1982.

An examination of these various documents reveals material and substantial evidence to support the finding of the Chancellor that the motion was not timely filed.

Appellant was employed by Gould, Inc., on April 3, 1979. He had worked for about two weeks when, on April 18, 1979, he injured his back while engaged in lifting. He was first seen by his family physician, Dr. White, who hospitalized him briefly. Dr. White then referred him to Dr. Glenn Barnett, who performed a laminectomy for a ruptured lumbar disc. Appellant was discharged by Dr. Barnett to return to work on a restricted basis as of July 16, 1979. One of his office notes, exhibited to appellant's deposition, was dated July 5, 1979. It states:

> "Patient comes in today, seems to be doing relatively well. His wound is nicely healed. Returned him to work on 7–16–79 with a light duty requirement of 30 lbs lifting for 3 months and then return to us if he has any problems in the future. After 3 months I think he should be able to resume his normal activities."

Appellant was paid temporary total disability benefits from the date of his injury through July 25, 1979, a total of sixteen weeks. The workers' compensation carrier also paid $6,486.79 for medical and hospital expenses incident to appellant's injury and treatment. Dr. Barnett gave appellant a permanent partial disability rating of fifteen percent of the body as a whole. Upon this basis the insurance carrier paid, and

appellant accepted, a lump-sum settlement of $6000. This payment was made immediately after the parties presented to the Chancellor a joint petition, signed and sworn to by appellant, seeking approval of settlement upon that basis. The Chancellor did approve the settlement after a hearing. Appellant signed the order of settlement and also signed a separate release, acknowledging complete settlement of all of his claims against the employer and the insurer under the Workers' Compensation Act. The settlement was duly presented to the Workers' Compensation Division of the Department of Labor and apparently approved by the Department. At least, no motion was made by the Department to reopen the settlement as provided in T.C.A. § 50–1006.

Because the date of appellant's injury preceded the effective date of a 1979 amendment to T.C.A. § 50–1023, a lump-sum settlement of appellant's claim could not have been ordered without approval of the employer and the insurance carrier. Appellant testified that he desired to receive a lump sum, and the other parties agreed.

One of the complaints of appellant in his motion for relief was that neither the insurance carrier nor its attorney advised him that he would be unable to find gainful employment. He had already been advised by his employer, however, on July 16, 1979, that it had no suitable work for him in his disabled condition. This was over a month before the workers' compensation settlement was entered into, and neither the insurer nor its attorney had anything to do with the employment policies of Gould, Inc.

At some time after the settlement was entered into, however, appellant, while not seeking counsel or seeking to re-open the workers' compensation award, filed a complaint with the Department of Labor alleging that his employer had discriminated against him because of his handicap. The record contains no documents concerning that proceeding, nor do the dates and the nature of the proceeding appear in the record.

After the settlement in August 1979 appellant testified that he saw Dr. Glenn Barnett on one or two more occasions for a checkup. The record is unclear as to whether he reapplied to his employer for work after October 16, 1979 (three months after he was told by Dr. Barnett that he could do light duty). He did seek employment with a CETA program and he also apparently drew unemployment compensation benefits for a short time. Although his deposition was somewhat unclear on the point, however, it does not appear that he sought further medical attention from Dr. Glenn Barnett or from anyone else until after the present motion was filed, one year after the settlement had been entered into. He apparently did not seek counsel until July 31, 1980, eleven months after the date of the settlement, and his attorney stated of record that he did not see another physician, Dr. Robert Barnett, until after he had employed counsel. The only report from Dr. Robert Barnett in the file is dated November 10, 1980. It reflects the results of an examination performed three days earlier, November 7, 1980. Dr. Robert Barnett stated that he found that

"a 15 percent anatomical rating for two back surgeries is not unreasonable . . . ."

He stated, however, that in view of "arthritic components" and the surgery which appellant had undergone, appellant

"... has become disqualified for anything but very light work. His limitation would be something in the region of 20 lbs. but not on a repetitive basis."

Dr. Robert Barnett reported that his examination revealed degenerative disc disease of the cervical spine, but he was not sure whether this was related to the original injury or whether it was "just developmental."

As far as the record reveals, appellant first saw Dr. Robert Barnett on November 7, 1980, over fourteen months after the date of the settlement which he seeks to set aside. Thereafter on December 9, 1980, he saw a clinical psychologist, and on January 14, 1981, he saw a psychiatrist.

On its facts the case is quite different from any other reported decision in which relief from a workers' compensation settlement has been permitted. In one of the first such cases, *Central Franklin Process Co. v. Gann,* 175 Tenn. 267, 133 S.W.2d 503 (1939), the settlement was entered on July 16, 1938, and the petition to re-open was filed on September 1, 1938, about six weeks later. The time interval between the settlement and the petition for relief was not set forth in *Lindsey v. Hunt,* 215 Tenn. 406, 384 S.W.2d 441 (1964), 387 S.W.2d 344 (1965), but the Court indicated that on its facts the case was very similar to the *Gann* case, *supra.*

In *Eller Brothers, Inc. v. Perkins,* 223 Tenn. 152, 443 S.W.2d 440 (1969), the settlement order was entered on October 31, 1967, and the motion to re-open was filed March 1, 1968, three months later. In *Corby v. Matthews,* 541 S.W.2d 789 (Tenn. 1976), the interval was approximately five months, from February 3, 1975, until July 7, 1975. As made clear in the *Corby* case, *supra,* such petitions have been permitted where there is a claim of fraud or mistake of fact with respect to the condition and degree of disability existing on the date of the original settlement order, but not with respect to some increase or decrease of disability thereafter. In that case the Court said:

> "By entering into lump sum settlements, both parties run a risk of injury. The employee runs the risk that his disability may increase in the future and the employer runs the risk that the disability of the employee may decrease in the future, but both parties are bound and foreclosed by the entry of a valid decree approving a lump sum settlement." 541 S.W.2d at 793.

In the present case the claim of appellant is essentially that he was not told that his disability from the standpoint of workers' compensation might or could exceed the anatomical disability rating given by the physician; that he was not advised of his right to counsel or a trial, and that he was told that the lump-sum settlement was all that he could ever receive. As we understand the record, there is no claim that he in fact had a greater anatomical disability than fifteen percent, but it is the opinion of his counsel, employed eleven months later, that he could have been given a greater disability rating by the trial judge had all of the facts and circumstances been developed.

In this regard, however, it does not appear that he received any further medical treatment or developed any new or different symptoms after the settlement, as was true in most of the cases cited above where re-opening has been permitted. In addition appellant testified that "a lot of people" told him that he had not received a sufficient award in the settlement. He said that his sister, Wanda Jones, was one of these persons but that he did not go to an attorney or seek legal advice until she finally made an appointment for him on July 31, 1980, eleven months after the date of the settlement.

There are regular methods for re-opening and re-evaluating long-term disability awards in workers' compensation cases. One of these is, of course, provided in T.C.A. § 50–1006, where the Department of Labor may intervene. Another is provided in T.C.A. § 50–1025, where continuing awards may be re-opened at intervals of six months or more. Lump-sum settlements, however, are ordinarily final and they have essentially the same status as other consent decrees. It is a very difficult and serious matter to undertake to set aside a formal judgment of a court, particularly after the lapse of a year, as occurred in this case.

■ It is a question of fact, and not one of law, as to whether a movant under T.R. C.P. 60.02 has acted within a reasonable time. In the present case it appears that appellant, while having a limited education, nevertheless talked to many persons about his award and about his re-employment. He apparently went to some officials in the Labor Department about his claim of discrimination. Nevertheless he did not seek further medical advice or evaluation for a long period of time, apparently over four-

teen months. Even then the report of his second orthopedic examiner was inconclusive as to whether the first disability rating was or was not accurate.

Under all of the circumstances we are unable to say that there was no material evidence in this record to support the conclusion of the Chancellor that appellant did not timely seek to reopen the settlement agreement. In the various affidavits and depositions filed there are some discrepancies and controverted issues of fact, not easily resolved without an oral hearing and detailed findings of fact. There is no dispute, however, as to the time sequence. A trier of fact could reasonably conclude that the delay in this case, far greater than that in any other reported case, was too great to meet the requirements of Rule 60.02.

In addition, as pointed out by the Chancellor, at no point did appellant ever offer to tender into court or to repay the lump-sum benefits which he received. This has been a requirement in the reported decisions in this state since *Lindsey v. Hunt,* 215 Tenn. 406, 384 S.W.2d 441 (1964), 387 S.W.2d 344 (1965). It was followed in *Eller Brothers, Inc. v. Perkins,* 223 Tenn. 152, 443 S.W.2d 440 (1969), and in *Corby v. Matthews,* 541 S.W.2d 789 (Tenn.1976). The requirement was sharply challenged and was reconsidered in some depth in *Cordell v. Sky Rides of America, Inc.,* 218 Tenn. 485, 404 S.W.2d 488 (1966). The Court was asked to rescind the rule requiring a tender of the amount received under a settlement in a workers' compensation case, but it declined to do so.

In the case of *Cockrell v. B & S Concrete Supply,* 477 S.W.2d 9 (Tenn.1972), the requirement of tender was alleged to be unconstitutional, depriving an employee of due process and equal protection of the law. These contentions were found by the Court to be without merit, and the requirement of tender was reiterated.

Appellant seeks to distinguish the foregoing cases because they did not arise under T.R.C.P. 60.02. They did, however, arise under one of the predecessors of that rule, the writ of error coram nobis, or under separate suits in equity to rescind workers' compensation settlements. T.R.C.P. 60.02 is a rule of procedure only, and not one of substantive law. The decisions quoted above considered tender as a part of the substantive law of rescission, and not a requirement peculiar to any particular form of procedure.

Because the rule has been so firmly engrafted into the substantive law of this state and made a requirement in cases such as this, we are not inclined to depart from the cases referred to above. In the first case in which the rule was announced, *Lindsey v. Hunt, supra,* the Court pointed out the need for great care by trial judges in approving workers' compensation settlements on the one hand, and the equally great need of stability in a proceeding such as this on the other.

The Chancellor did not address the sufficiency of the evidence of fraud or mistake in this case, nor is it necessary that we treat these at length. Unlike the cases where re-opening has been permitted, however, there is no claim that the worker was misled by a company doctor's report and then obtained further medical evidence or that there was any actual misstatement to him of the nature and extent of his injury. It is claimed here that another judge might have made a greater award, which is extremely speculative, and that trial judges never base an award solely on the medical disability rating, which is not an accurate conclusion. Judges are not required to confine an award to that rating, but the fact that an award is so based does not necessarily render it fraudulent or vulnerable because the claimant later becomes dissatisfied.

The judgment of the Chancellor is affirmed at the cost of appellant. The cause will be remanded to the trial court for collection of costs and any other orders which may be necessary.

FONES, C.J., and COOPER, J., concur.

DROWOTA, J., files dissenting opinion.

BROCK, J., joins in dissent.

DROWOTA, Justice, dissenting.

The Chancellor in this cause granted the Defendants' motion for summary judgment and, in so doing, also overruled Plaintiff's motion to set aside a final judgment pursuant to Rule 60.02 TRCP. This was clearly error because the record shows that genuine issues as to numerous material facts were presented to the Chancellor for his consideration, and it was error, therefore, for him to grant summary judgment. *See Jones v. Home Indemnity Insurance Co.,* 651 S.W.2d 213 (Tenn.1983).

Plaintiff's amended complaint alleges "that this settlement was procured through fraud, deceit, and misrepresentation of law and fact practiced upon Larry Wooley by the Defendant, CNA Insurance Company and Gould, Inc." These allegations were denied by the Defendants in their affidavits and depositions filed in support of their motion for summary judgment.

We find in the record on appeal the affidavit and deposition of the claim representative who handled this claim for the Defendant CNA, the affidavit of the attorney who prepared the petition and order and submitted the matter for the Chancellor's approval, and the deposition of the Manager of Industrial Relations for the Defendant Gould, Inc. These depositions and affidavits affirmatively deny any wrongdoing. Defendant also filed Larry Wooley's deposition. In response to Defendants' motion for summary judgment, Plaintiff filed the affidavit of Larry Wooley. Hotly contested issues of material facts were raised by these depositions and affidavits.

The issue of fraud by its very nature, is one which requires for determination the actual hearing and viewing of witnesses whose credibility is of paramount concern for the trier of facts. *Long v. State Farm Fire & Casualty Co.,* 510 S.W.2d 517, 519 (Tenn.App.1974). As the majority opinion states, "[I]n the various affidavits and depositions filed there are some discrepancies and controverted issues of fact, not easily resolved without an oral hearing and detailed findings of fact." The majority opinion, however, affirmed the Chancellor's denial of Rule 60.02 relief on the ground that the motion was not timely filed and that there had been no tender or offer to return the benefits received.

Plaintiff's motion was filed within the time permitted in Rule 60.02, although, as pointed out in the majority opinion, it was "filed within the very maximum time limit permitted."

I think it is important to note that Appellant has a limited education. He can barely read and is unable to write much more than his name. He was classified, by expert witnesses through affidavits, as functioning within the range of borderline retardation. He did not seek counsel until more than 11 months after the date of the settlement. His counsel then filed a Rule 60 motion within the one-year deadline. I do not feel we should dismiss one's claim and deny him access to the courts under the facts and circumstances of this case. Equity and fairness entitles a disabled employee to have his day in court.

Neither do I believe that an indigent's access to the courts should be denied for failure to tender. In this case, Appellant is proceeding as a pauper on appeal. He is 37 years old, married and has two children. He has not been gainfully employed since the date of his injury, April 18, 1979. He testified that he took the lump sum because he was "deep in debt ... I'd been off work so long."

Courts must make sure that the rights of the employee are being upheld under the compensation laws. I, therefore, respectfully disagree with my colleagues, for this was not a proper case to dismiss on summary judgment. I would reverse the order granting summary judgment and remand for a full hearing on Appellant's Rule 60.02 motion.

BROCK, J., concurs in this dissent.