# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 22, 2003 Session

## A.I.J.J. ENTERPRISES, INC. v. NORMAN WEIZER

**Direct Appeal from the Circuit Court for Shelby County**
**No. 71790 T.D.     Robert Childers, Judge**

---

**No. W2002-00975-COA-R3-CV - Filed February 20, 2003**

---

This dispute regards a contractual obligation of an employee to repay recruitment costs incurred by his employer should he leave his position within a two year period.  The trial court applied Florida law to the dispute and awarded judgment to the employer.  We hold the contract is governed by New York law.  We further find the provision was not applicable where the employee was terminated and reverse the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Donald Capparella, Brentwood, Tennessee, for the appellant, Norman Weizer.

Howard R. Peppel, Memphis, Tennessee, for the appellee, A.I.J.J. Enterprises, Inc.

### OPINION

In April of 1993,  an executive recruiting agency contacted Norman Weizer (Mr. Weizer), a resident of North Carolina, regarding a position with AIJJ Enterprises ("AIJJ").  AIJJ operates retail clothing outlets in forty states.  Several AIJJ executives, including Mr. Kevin Cohen (Mr. Cohen), AIJJ's Director of Store Operations, interviewed Mr. Weizer twice in New York. Following the second New York interview, Mr. Cohen offered Mr. Weizer a position as a regional manager for AIJJ on the West Coast.  Mr. Weizer accepted this position and began working for AIJJ in June of 1993, when he attended a training session in Florida.

Mr. Weizer submits that when he arrived in Florida, he was asked to sign a recruitment fee contract which obligated him to repay AIJJ for recruitment costs, including fees to the recruitment agency, if he left the employment of Rainbow (a subsidiary of AIJJ) within two years.  He contends that he was told by Mr. Cohen that if he did not sign the recruitment fee contract he would be

terminated. Mr. Weizer signed the contract, but modified it by striking out a parenthetical phrase which described the "leaving" of AJJJ as: "(including but not limited to your termination of me)." He also struck out a provision requiring him to indemnify, hold harmless and defend AIJJ in the event of a suit brought by a recruitment agency for such fees. Mr. Weizer asserts that he and Mr. Cohen discussed Mr. Weizer's objection to the phrase which included termination as a basis for repayment of the recruiting fees, and that Mr. Cohen approved the modifications proposed by Mr. Weizer. Mr. Weizer then faxed the amended contract to Mr. Cohen in New York. Mr. Cohen signed the amended contract the same day and returned it to Mr. Weizer.[1]

Mr. Cohen testified that Mr. Weizer was given this recruitment fee contract along with his employment contract and other documents when he was in New York, but took it with him to review and send back to AIJJ. Mr. Cohen further asserts that Mr. Weizer was advised of AIJJ's policy regarding the reimbursement of fees at an earlier interview. Mr. Cohen testified that Mr. Weizer's position with AIJJ was inferior to positions Mr. Weizer had held in the past, and that AIJJ was therefore concerned that Mr. Weizer might leave the company if he were offered a superior position elsewhere. Mr. Cohen acknowledged that he approved the modifications to the recruitment fee contract made by Mr. Weizer, agreeing that objectionable phrases could be deleted.

In July of 1993, Mr. Weizer began work as a regional West Coast manager for AIJJ and was based in California. In May of 1994, Mr. Weizer submitted his resignation to AIJJ. According to Mr. Weizer, the resignation was not accepted and he was asked by principals of the company to reconsider. He contends that while at an AIJJ store in California, Mr. Cohen telephoned him and told him that his resignation was not accepted and that he was terminated. Mr. Cohen testified that Mr. Weizer submitted his resignation when AIJJ initiated an investigation of complaints made against him. He further testified that he did not tell Mr. Weizer that his resignation would not be accepted, but that he did tell Mr. Weizer to "cool down and think." Mr. Cohen denied telling Mr. Weizer he was terminated.

Mr. Weizer left the employment of AIJJ, and AIJJ billed Mr. Weizer for $12,000, the amount it asserts it paid to the recruitment company through which it hired Mr. Weizer. In 1995, AIJJ filed suit to recover the $12,000 in General Sessions Court for Shelby County and obtained a default judgment against Mr. Weizer. Mr. Weizer appealed the judgment to circuit court. One of the issues litigated in circuit court was whether the recruitment fee contract is properly interpreted under New York, Florida or California law. The circuit court applied Florida law, and in March of 2002

---

[1]The pertinent language of the agreement at issue, as amended, is as follows:

In the event for any reason whatsoever I leave the employ of Rainbow ~~(including but not limited to your termination of me),~~ within two (2) years after I first commenced working for Rainbow, and provided I was referred to Rainbow by an employment agency or the like, I agree to reimburse to you any and all agency fees, commission fees, referral fees, or the like, you may have paid, incurred, or owe with respect to my employment[.] ~~and further, I agree to indemnify you, hold you harmless and defend for you at my cost against any claims or suits brought by such agency for such fees.~~

affirmed judgment for AIJJ. The judgment in favor of AIJJ in circuit court included prejudgment interest accruing from August 1, 1995. Mr. Weizer filed a timely notice of appeal to this Court.

## *Issues Presented*

The issues as presented by Mr. Weizer for review by this Court are:

(1)     Whether the trial court erred in failing to apply California law to the recruitment fee contract in this case.

(2)     Whether under California law, the recruitment fee contract at issue in this case is void and unenforceable as an unlawful restraint on trade.

(3)     Whether the recruitment fee contract in unenforceable under Florida law as an unlawful penalty designed to coerce compliance with the contract.

(4)     Whether AIJJ ever established the required damage element of its breach of contract claim, where it failed to prove it ever paid the $12,000 invoice for which it sought reimbursement.

(5)     Whether the preponderance of the evidence is in favor of a finding that Mr. Weizer was terminated by AIJJ, making the recruitment fee contract unenforceable under its own terms as modified.

## *Standard of Review*

The interpretation of a contract is a matter of law. ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999). We review the trial court's conclusions on matters of law ***de novo***, with no presumption of correctness. Tenn. R. App. P. 13(d); ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000).

## *Application of California Law*

Absent a contractual choice of law provision, Tennessee courts apply the ***lex loci*** rule to contract causes of action. ***Solomon v. FloWarr Mgmt.***, 777 S.W.2d 701, 704-05 (Tenn. Ct. App. 1989)(perm. app. denied). Accordingly, the substantive law of the state in which the contract was made is applied to disputes arising from the contract. ***Id.*** An exception to this general rule is often made when the contract is to be performed in another state and the parties envision performance in accordance with that state's laws. ***Id.*** at n5. The primary consideration to be made in determining whether the exception applies is whether the contract was made "in good faith with reference to the law of some other state," or "with [a] view to" the other state. ***Ohio Cas. Ins. Co. v. Travelers Indem. Co.***, 493 S.W.2d 465, 466-67 (Tenn. 1973) (quoting ***First Am. Nat'l Bank of Nashville v.***

*Automobile Ins. Co.*, 252 F.2d 62 (6th Cir. Tenn. 1958)).  The intent of the parties in this regard is to be "gathered from the terms of the instruments and all of the attending circumstances."  *Id.*

Mr. Weizer contends that the recruitment fee contract at dispute in this case is governed by California law since he was based in California while a regional manager with AIJJ.  He submits that under California law, the contract is void as an unlawful restraint on trade.  AIJJ argues that although Mr. Weizer resided in California during the term of his employment, he was not hired with the understanding that his contract was to be performed in California.  AIJJ further submits that as a regional manager, Mr. Weizer was required to perform his duties in several states.  It argues that California law therefore is no more applicable than that of other states which were included in Mr. Weizer's region.

We agree with AIJJ that this contract does not fit into the exception to the *lex loci* rule of contracts as applied in Tennessee.  There is nothing in the record to indicate that Mr. Weizer was to be exclusively employed in California, or that the parties anticipated application of California law when the contract was formed.  Although Mr. Cohen was based in California during his tenure with AIJJ, as regional manager for the West Coast his area of responsibility also included stores in Colorado, New Mexico, Utah and Idaho.  We affirm the trial court in so far as it refused to apply California law to this dispute.  Accordingly, it is not necessary to determine whether the recruitment fee contract would represent an unlawful restraint on trade under the laws of California.

### Application of Florida Law

The trial court determined that the contract was governed by Florida law, as Mr. Weizer was physically located in Florida when he signed it.  As noted above, the parties dispute whether the recruitment fee contract was included in the packet of documents presented to Mr. Weizer by Mr. Cohen in New York, or whether it was first presented to him when he went to Florida for training.  It is undisputed, however, that the contract which Mr. Weizer faxed from Florida to Mr. Cohen in New York was an amended version of the contract originally offered by AIJJ.  As such, the amended contract became a counter-offer and was not binding until accepted by Mr. Cohen on behalf of AIJJ.  It is undisputed that Mr. Cohen signed the counter-offer and returned it by fax to Mr. Weizer the same day.  Thus the counter-offer was accepted and became a binding contract when accepted by Mr. Cohen in New York.  *See Davis v. Connecticut Gen. Life Ins. Co.*, 743 F.Supp. 1273, (M.D. Tenn. 1990); *Hall & Co., Inc. v. Cont'l Cas. Co.*, 34 A.D.2d 1028, 1029 (N.Y. App. Div. 3d Dep't 1970).  Although Mr. Weizer has suggested in his brief to this Court that Mr. Cohen's physical whereabouts at the time he accepted the contract have not been determined, we note that this issue was not raised below.  This Court will not address an issue which is raised for the first time on appeal.  *Culp v. Culp*, 917 S.W.2d 233, 238 (Tenn. Ct. App. 1995).  It accordingly may not be asserted for the first time here.  Further, Mr. Weizer faxed the contract to New York, and there is nothing in this record to indicate that Mr. Cohen was anywhere but in New York when he signed it and sent it back to Mr. Weizer.  Since the contract was accepted and became binding in New York, New York law governs this dispute.  We therefore find it unnecessary to address whether the contract would be enforceable under Florida law.

*Enforceability Under New York Law*

The thrust of Mr. Weizer's argument, as we perceive it, is that the recruitment fee contract is unenforceable as an impermissible restraint on trade. Mr. Weizer submits that the contract imposes a penalty on him for leaving his employment, and that as such it is an invalid covenant not to compete. We disagree.

We first note that we do not believe the contract is analogous to a covenant not to compete. While AIJJ does not dispute that it was concerned that Mr. Weizer might leave its employment for a better position, the contract does not attempt to limit or restrict Mr. Weizer's ability to do so. The plain language of the contract required Mr. Weizer to repay AIJJ for recruitment fees it may have incurred in hiring Mr. Weizer through a recruitment agency should Mr. Weizer leave AIJJ within two years. It provides for repayment regardless of why Mr. Weizer chose to leave. The contract placed no restraint on Mr. Weizer's ability to work for a competing employer, even if he had chosen to do so while still employed by AIJJ. The agreement was one to reimburse AIJJ for costs incurred pursuant to recruiting Mr. Weizer if Mr. Weizer were to leave AIJJ within two years.

However, even if we stretch our interpretation of the contract so as to envision it as a covenant not to compete, it would not be unlawful under the laws of New York. In New York, such a covenant is enforceable "if it is reasonable as to time and area, necessary to protect the employer's legitimate interests, not harmful to the public, and not unduly burdensome." ***Albany Med. College v. Lobel***, 296 A.D.2d 701, 702 (N.Y. App. Div. 3d Dep't 2002). A liquidated damages provision in such a covenant is not impermissible where it is proportionate to the employer's probable, actual loss. Where it is disproportionate, however, or bears no relationship to the employee's breach, the liquidated amount may constitute an unenforceable penalty. ***See Curtis v. Amela-Bouyea***, 137 A.D.2d 944, 945 (N.Y. App. Div. 3d Dep't 1988); ***Novendstern v. Mt. Kisco Med. Group***, 177 A.D.2d 623, 625 (N.Y. App. Div. 2d Dep't 1991).

The agreement at dispute in this case obligated Mr. Weizer to reimburse AIJJ for the actual costs it incurred if it hired Mr. Weizer through a recruitment agency if Mr. Weizer left the employment of AIJJ within two years. These costs were limited to "any and all agency fees, commission fees, referral fees or the like." They additionally were limited to those fees actually "paid, incurred or owe[d]" by AIJJ. The agreement placed no limitations on Mr. Weizer's ability to accept employment with a competitor.

The damages amount envisioned in this agreement were directly related to the actual costs of recruitment incurred by AIJJ, and were limited to a two year period. Although we note that AIJJ would have been obligated to pay the recruitment fees regardless of whether Mr. Weizer remained in its employ, it presumably would not have to incur the cost of recruiting twice within two years. Accordingly, we do not believe that the damages envisioned in this agreement constitute a penalty.

### *Interpretation of the Recruitment Fee Contract*

New York, like Tennessee, adheres to the fundamental precept that contracts are to be construed by the courts in "accord with the parties' intent." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002). The written contract of the parties constitutes the best evidence of their intent. *Id.*

The trial court awarded judgment to AIJJ after finding that Mr. Weizer had agreed to reimburse AIJJ for the recruitment fees if he left AIJJ within two years; that Mr. Weizer's employment with AIJJ had "ended" within two years; that AIJJ had incurred a fee of twelve thousand dollars. The trial court made no findings of whether Mr. Weizer's employment was "ended" through resignation or termination. AIJJ submits that Mr. Weizer was obligated to repay the recruitment fees if his employment ended for "any reason whatsoever." It argues that the term "whatsoever" unambiguously encompasses all instances in which Mr. Weizer was no longer employed by AIJJ, whether as a result of voluntary resignation or termination. AIJJ submits that Mr. Weizer could have marked out the selected words for any number of reasons, including finding the grammar objectionable.

Mr. Weizer contends that the contract as modified obligated him to repay these fees only if he left for reasons other than being terminated by AIJJ. Mr. Weizer argues that the word "leave" in the context of this agreement is ambiguous. He further contends that the contract in evidence, which includes the original contract as offered by AIJJ with the noted provisions terms marked out by hand by Mr. Weizer, evidences this ambiguity. He argues that it was his intent to make the terms inapplicable if he was terminated as opposed to leaving the employment of AIJJ voluntarily. At oral argument, counsel for Mr. Weizer also noted that the strict interpretation urged by AIJJ would render the repayment obligation applicable only if Mr. Weizer left "in" rather than "within" two years. The absurd result would be that the contract would be inapplicable if Mr. Weizer left AIJJ's employ before the two year period.

The contract in the record is the original contract as offered by AIJJ with portions marked out by Mr. Weizer. Therefore, it is unnecessary for us to look beyond the contract itself to determine the course of negotiations between these parties. Clearly, AIJJ intended that Mr. Weizer would be obligated to repay any recruitment fees it incurred if, within two years, he was no longer employed by AIJJ. The unamended contract unquestionably included voluntary departure by Mr. Weizer as well as termination by AIJJ. Mr. Weizer argues that deletion of the parenthetical phrase "including your termination of me," modified the contract to exclude termination by AIJJ as a basis for repayment of the recruitment fees.

The fact that the original contract included, as a parenthetical, that "leaving" included termination is itself evidence that the term is ambiguous. Were it not ambiguous, such a parenthetical explanation would not have been necessary. The parties do not dispute that Mr. Weizer discussed his reservations regarding the contract with Mr. Cohen by telephone, or that Mr. Cohen approved the modifications suggested by Mr. Weizer. The most logical, natural and fair reading of

the contract before us evidences a counter-offer by Mr. Weizer that he agreed to repay the recruitment fees unless his "leaving" of AIJJ was the result of termination by AIJJ. Mr. Cohen signed the counter-offer and it became the contract governing this dispute. In light of the above, we hold that Mr. Weizer was bound to repay AIJJ for recruitment fee costs incurred by AIJJ if Mr. Weizer left AIJJ's employment for any reason other than termination by AIJJ.

### *Resignation or Termination*

Having determined that Mr. Weizer was not obligated to repay recruitment fee costs if he was terminated by AIJJ, we must next determine whether Mr. Weizer resigned or was terminated by AIJJ. Mr. Weizer does not dispute that he initially resigned from his position with AIJJ. He contends, however, that his resignation was not accepted and that he was then terminated by Mr. Cohen during a telephone conversation. Mr. Cohen testified that he did not tell Mr. Weizer that he was terminated. Since the trial court made no findings of fact regarding whether Mr. Weizer resigned or was terminated, we review the record *de novo* with no presumption of correctness for the trial court's conclusions. *Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn. Ct. App. 1984).

As the plaintiff in this cause of action, the burden of proof is on AIJJ to prove the elements of its case. *See, e.g., Walker v. Sidney Gilreath & Assoc.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *Delgado v. Kornegay*, 395 N.Y.S. 2d 126, 127 (N.Y. 1977). Having reviewed the record, we cannot say that the evidence preponderates in favor of a finding that Mr. Weizer's employment with AIJJ ended with resignation rather than termination. AIJJ has failed to carry its burden of proof on this element. Judgment for AIJJ accordingly is reversed.

### *Conclusion*

The general *lex loci* rule regarding contract actions in Tennessee is applicable in this case. We accordingly review this dispute according to the substantive law of New York, where Mr. Weizer's counter-offer was accepted and the contract became binding on the parties. The contract as modified by Mr. Weizer and accepted by AIJJ evidences an intent by the parties that Mr. Weizer would be obligated to repay the recruitment fees incurred by AIJJ if he left AIJJ's employment for any reason other than termination within two years. As the plaintiff in this cause of action, AIJJ bore the burden of proving that Mr. Weizer's employment ended with resignation rather than termination. AIJJ has failed to carry this burden of proof. Judgment for AIJJ accordingly is reversed. In light of the foregoing, the question of whether AIJJ proved its damages is pretermitted. Costs of this appeal are taxed to the Appellee, A.I.J.J. Enterprises, Inc.

_____
DAVID R. FARMER, JUDGE